IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:23-CV-00029-KDB-DCK

| | |
|---|---|
| SHANNON LYNCH AND JAMES LYNCH,<br><br>Plaintiffs,<br><br>v.<br><br>NUCOR CORPORATION, ET AL.,<br><br>Defendants. | **ORDER** |

**THIS MATTER** is before the Court on Defendant Nucor Corporation's ("Nucor") Motion to Dismiss (Doc. No. 126-1). The Court has carefully considered this motion, the parties' briefs and exhibits, and other relevant pleadings of record. With due regard for the applicable standard of review of motions to dismiss pursuant to Rule 12, the Court finds that Plaintiffs have, at this initial stage of the case, adequately pled a manufacturing defect claim against Nucor, but have not sufficiently pled their failure to warn, negligence, gross negligence and wrongful death claims, which will be dismissed without prejudice. Therefore, the Court will, in part, **GRANT** and, in part, **DENY** Nucor's motion.

I.     **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted" tests whether the complaint is legally and factually sufficient. *See* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd*, 566 U.S. 30 (2012). A court need not accept a complaint's "legal conclusions,

1

elements of a cause of action, and bare assertions devoid of further factual enhancement." *Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). The court, however, "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Id.* Construing the facts in this manner, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* Thus, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

## II.     FACTS AND PROCEDURAL HISTORY

Plaintiffs James Lynch and Shannon Lynch filed this action individually and on behalf of their deceased son, Parker Lynch ("Parker"), and his estate. Parker was tragically killed on February 11, 2019, when a bullet fired by one of his friends pierced through the front-panel of a body armor vest that Parker was testing with those friends, resulting in his death. Plaintiffs seek to hold Nucor, the manufacturer of the steel included in the vest; Nucor's third party distributor Leeco Steel, LLC., ("Leeco"); Arkansas Machine Works, Inc. ("AMW"), which cut the Nucor steel into panels; Tuff Coat LLC ("Tuff Coat"), which applied a final spray coating to the steel; and Black Diamond Body Armor ("Black Diamond"), the company that manufactured the body armor vest, liable for Parker's death.

Armor-piercing bullet protection with the highest-performing United States steel alloys are manufactured to MTL-DTL-46100E standards with a BHN hardness rage of 477-534 in the high-hardness armor. (Doc. No. 1, ¶ 34). Nucor is a custom steel manufacturer that designs, markets, and sells MIL-A-46100 steel with a Brinell hardness number ("BHN") range of 497-534. In

2

October 2017, Black Diamond purchased six sheets of ¼ x 96 x 48 MIL-A-46100 steel from Leeco. Plaintiffs allege that the steel was expressly warranted by Nucor as being manufactured to MIL-DTL-46100E specifications with a BHN hardness range of 497-523. (Doc. No. 1, ¶¶ 33-34).

The MIL-A-46100 steel purchased from Nucor allegedly was in turn advertised by Lecco as being "military grade steel which exhibits high hardness" and "is approved for use within the Department of the Army." (Doc. No. 1, ¶ 35). Furthermore, Lecco warranted that the MIL-A-46100 steel armor was "fit for the particular purpose of stopping high velocity projectiles, such as sniper fire" and could be "formed within certain ductile limitations." (*Id.* at ¶ 35). After Lecco sold the Nucor steel sheets to Black Diamond, it was sent to AMW, where it was "plasma cut" into "Level 4, 10 x 12, Shooter's Cut" pieces (Doc. No. 1, ¶ 36). The steel was then sent to Tuff Coat for a final spray coating to prevent metal fragmentation if the armor failed. (*Id.* at ¶ 36). Finally, the steel was shipped to Black Diamond where it was included in a body armor vest, which was then distributed and sold to the public. (*Id.* at ¶ 36). The steel in the body armor allegedly arrived at Black Diamond in the same condition as when Leeco first entered it into the stream of commerce. (*Id.* at ¶ 36).

On January 26, 2019, Parker ordered the Level 4, 10 x 12, "Shooters Cut" body armor vest from Jim Tames, who operated Black Diamond. (Doc. No. 1, ¶ 37). Plaintiffs allege that the MIL-A-46100 steel in the body armor was warranted to stop a military grade 5.56 x 45 M855 bullet ("green tip armor piercing bullet"), among other types of rounds. On February 11, 2019, shortly after the order was placed, Parker received the body armor in the mail from Black Diamond and decided to use and test the body armor with his friends. (Doc. No. 1, ¶ 38). Parker and his friends first shot the armor vest's back panel with a .223 red tip armor piercing bullet (which is alleged

3

to be the "civil version" of a 5.56 bullet). The shot to the back panel did not penetrate through the armor vest. (Doc. No. 1, ¶ 39).

Allegedly upon seeing that the back panel of the vest was effective in stopping the .223 bullet, Lynch put on the vest to test the front panel. (Doc. No. 1, ¶ 39). Then, one of his friends shot Lynch in the front panel of the vest with another .233 bullet, which is alleged to be "nearly identical" to the bullet shot at the back panel. (*Id.* at ¶ 39). This shot, however, penetrated through the MIL-A-46100 steel body armor's front panel and struck Mr. Lynch's liver. Emergency medical personnel were unable to save Lynch, who died from the bullet wound.

Plaintiffs allege that if the MIL-A-46100 steel had not failed, Lynch would not have lost his life. They filed their Complaint on February 6, 2021, naming the various companies that manufactured, cut, distributed and sold the steel and the vest as defendants. (Doc. No. 1). With respect to Nucor, in addition to a wrongful death claim which is pled against all defendants, Plaintiffs allege claims for strict liability, negligence, and gross negligence. In its motion to dismiss Nucor contends that the Complaint does not allege sufficient factual detail to plausibly state any of the asserted claims. (Doc. No. 126-1). The motion is fully briefed and ripe for decision.

### III. DISCUSSION

Nucor moves to dismiss all the claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6). Broadly stated, Nucor argues that Plaintiffs' Complaint fails to allege essential elements and facts in support of each claim. *See* Doc. No. 126-1, at 3.[1]

Nucor first contends that because Plaintiffs have failed to allege that the steel was unreasonably dangerous at the time it left Nucor's control, it cannot satisfy a required element

---

[1] The parties generally agree for the purposes of this motion that Arizona law applies. Nucor does not concede that Arizona law applies but has cited Arizona law in its briefing and contends that it is entitled to dismissal of the Plaintiffs' claims under any applicable law.

4

under both strict liability and negligence claims. *See Hearn v. R.J. Reynolds Tobacco Co.,* 279 F.Supp.2d 1096, 1102-03 (D. Ariz. 2003) ("[A]ll of Plaintiff's product liability claims will fail if, as a matter of law, Defendants' products are not unreasonably dangerous."). Specifically, Nucor argues Plaintiffs cannot plausibly allege that the steel was "unreasonably dangerous" because Plaintiffs fail to establish that the product was "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." *Hearn*, 279 F.Supp.2d at 1102-03 (citing RESTATEMENT (SECOND) OF TORTS § 402A, cmt. i). In response, Plaintiffs contend that Parker allegedly believed that the body armor vest was not dangerous, but rather was designed to avoid danger, specifically the potentially deadly penetration of bullets. *See* Doc. No. 128, at 5.

Taking the allegations of the Complaint as true, together with all reasonable inferences, the Court agrees with Plaintiffs. If, as alleged here, a bullet proof vest does not work properly then it is unreasonably dangerous beyond the "common knowledge" of the community, which is that bullet proof vests stop bullets under certain circumstances (including those allegedly warranted by the manufacturer of the particular device). *See* Doc. No. 128, at 5. Indeed, it may be inferred that Parker and his friends' first successful test shot to the back panel of the vest provided further evidence to them that the vest was not "unreasonably dangerous" if it performed as intended (but of course turned out to be dangerous once it didn't work). Thus, the Court finds that Plaintiffs have adequately alleged facts to demonstrate that the MIL-A-46100 steel in the body armor vest sourced from Nucor was "unreasonably dangerous" when Parker used the vest and was killed.

### A. Strict Liability

Arizona law recognizes strict products liability claims for manufacturing defects, design defects, and warning or instruction defects. *See Enedina Coronado, et al., v. Costco Wholesale*

*Corp.*, 2019 WL 5448312, at *4 (D. Ariz. Oct. 24, 2019) (citing *Brown v. Sears, Roebuck & Co.*, 136 Ariz. 556, 562 (Ct. App. 1983). To establish a strict liability claim, a plaintiff must show that (1) the product was sold in a defective condition unreasonably dangerous at the time it left the manufacturer's control; (2) the defective condition was the proximate cause of Plaintiff's injury; and (3) the Plaintiff has in fact been injured. *See e.g., Hearn*, 279 F.Supp.2d at 1103; *Sw. Pet Prods., Inc. v. Koch. Indus., Inc.,* 273 F.Supp.2d 1041, 1051 (D. Ariz. 2003). However, a conclusory recitation that a product is defective and unreasonably dangerous without alleging additional facts to demonstrate how the device is dangerous is insufficient to state a plausible manufacturing defect claim. *See Jones v, Medtronic Inc.*, 411 F.Supp.3d 521, 531 (D. Ariz. 2019), *aff'd sub nom*. *Jones v. Medtronic*, 830 F.App'x 925 (9th Cir. 2020) (failing to connect or tie an allegedly defective and unreasonably dangerous medical device with an issue or error in the manufacturing process is insufficient to state a plausible claim); *Baca*, 2020 WL 6450294, at *3 (D. Ariz. Nov. 2, 2020) (quoting *Hix v. Bos. Sci. Corp*., 2019 WL 6003456, at *4 (D. Ariz. Nov. 14, 2019)) (dismissing Plaintiff's claim under a manufacturing defect theory for failure to explain how alleged defects in a medical pelvic repair system are tied to the manufacturing process). Here, the Complaint's strict liability claims include allegations of both a manufacturing defect and a failure to warn.

        1.    <u>Manufacturing Defect</u>

Beyond the elements listed above, a manufacturing defect claim under Arizona law requires that the defective product differ from the manufacturer's intended design. *Spedale v. Constellation Pharm. Inc.,* 2019 WL 3858901, at *15 (D. Ariz. Aug. 16, 2019). A plaintiff should compare the defective product to other non-defective products in the same line or explain how the product deviates from seemingly identical models. *Id; See Baca v. Johnson & Johnson,* 2020 WL

6

645029, at *2; *Hearn*, 279 F.Supp.2d at 1115 (quoting *Brady v. Melody Homes Manufacturer*, 121 Ariz. 253, 256, (Ct. App. 1978), *overruled on other grounds by Dart v. Wiebe Mfg., Inc.*, 147 Ariz. 242, 709 P.2d 876 (1985)). According to Nucor, Plaintiffs fail to allege facts as to how the MIL-A-4600 steel in the body armor vest purportedly deviated from Nucor's intended design, or how the defect in the steel caused the Plaintiff's injury. *See* Doc. No. 126-1, at 7. However, again, the Complaint alleges that the MIL-A-46100 steel used in the back panel of the body armor vest worked but the front panel steel did not. All of the steel in the vest was sourced from Nucor; therefore, the varying performance of the steel in the front and back panels at least provides a plausible[2] inference that the front panel steel "deviated" from Nucor's intended design and was accordingly defective. *See Baca*, 2020 WL 6450294, at *3 ("In Arizona, the crux of a manufacturing defect claim is that the defective product differs from the manufacturers' intended design or from other ostensibly identical units of the same product line.").

Nucor also points to Plaintiffs' allegation that Nucor's steel reached Parker "in the condition expected and intended by Nucor," which Nucor argues defeats the "crux of a manufacturing defect claim." *See* Doc. No. 1, ¶ 98; Doc No. 126-1, at 6 (quoting *Baca*, 2020 WL 6450294, at *2). However, Plaintiffs further allege that Nucor placed its MIL-A-46100 steel "into the stream of commerce for the purpose of being used as body armor." Doc. No. 1, ¶ 97. Thus, reading the Complaint in the light most favorable to Plaintiffs, Plaintiffs' claim that the steel reached Parker in the condition expected and intended by Nucor is not inconsistent with Plaintiff's argument that the performance of the steel was unreasonably dangerous and defective. Instead, it simply reflects Plaintiffs' allegation that Nucor was aware that its steel would be used in wearable

---

[2] Of course, the Court reaches no conclusion or suggests any forecast of what facts discovery will ultimately establish with respect to Plaintiffs' allegations that any of Nucor's steel was defective.

7

bullet proof products and should have produced steel that would not be defective under those circumstances.

In sum, as to Plaintiffs' claim of strict liability for a manufacturing defect, viewing the alleged facts and the inferences to be drawn from them under the applicable (and generous) 12(b)(6) standard, the Court finds that the Complaint contains sufficient facts that if accepted as true state a plausible claim for relief. Plaintiffs have alleged facts that allow the Court to infer that: (1) the MIL-A-46100 steel used in the front panel of the vest was defective; (2) this steel deviated from Nucor's intended result of stopping high-speed projectiles and .223 and .556 bullets when used in body armor; and (3) this defect allowed the bullet to penetrate through the steel, resulting in Parker's death. Thus, there may have been, but of course need not have been, a manufacturing defect by Nucor resulting in a fatal injury

As part of its motion with respect to Plaintiffs' strict liability claim, Nucor also suggests an issue with respect to alleged design defects "to the extent the Complaint can be construed to assert a strict liability design defect theory." Doc. No. 126-1, at 10. Plaintiffs allege in the Complaint that Nucor's MIL-A-46100 steel was unreasonably dangerous as designed and that there were "safer alternative design(s)" that were reasonably or feasibly available to Nucor. However, it is not clear whether Plaintiffs have alleged a "design defect" as an independent act of wrongdoing or if it is included among the other allegations of manufacturing wrongdoing by Nucor. Thus, the Court declines to rule on it separately here. To the extent that Plaintiffs intend to rely on a claim of design defect theory under strict liability as a separate and alternative ground, the Court can address any challenge Nucor wants to present at summary judgment.

2. <u>Failure to Warn</u>

While the Court will allow Plaintiffs' manufacturing defect claim to proceed, it will grant Nucor's motion to dismiss Plaintiffs' "failure to warn" claim. Specifically, the Court agrees with Nucor that the Complaint does not allege that Nucor had a duty to warn Plaintiffs. *See* Doc. No. 126-1, at 9. Under Arizona law, to establish a prima facie case of strict liability for failure to warn (or "informational defect"), a plaintiff must plead (1) that the defendant had a duty to warn; (2) that the missing warning made the product defective and unreasonably dangerous; (3) that the warnings were absent when the product left defendant's control; and (4) that the failure to warn caused the plaintiff's injury. *See Baca*, 2020 WL 6450294, at *3 (citing *Sw, Pet Prods., Inc. v. Koch Indust., Inc.*, 273 F. Supp. 2d 1041, 1060 (D. Ariz. 2003); *McGeorge v. City of Phoenix*, 117 Ariz. 272 (Ct. App. 1977) ("Where liability is incurred by reason of 'failure to warn [,]' it is because there is found present a duty to prevent harm to the individual who is injured."). Plaintiffs allege in their failure to warn claim:

> Defendant Nucor failed to give adequate and proper warning and instructions regarding the dangers of the MIL-A-46100 steel which rendered the MIL-A-46100 steel defective and unreasonably dangerous and was a producing cause of the damages and injuries sustained by Plaintiffs. Specifically, Defendants' failure to warn of the ductile limitations of the MIL-A-46100 steel was a proximate cause of the damages and injuries sustained by Plaintiffs.

Doc. No. 1, ¶100. Beyond the conclusory allegation of failure to warn of the "ductile limitations" of the steel, the Complaint is silent as to how or why Nucor had a duty to so warn, and, more particularly, a duty to warn Parker that led to his death. Thus, Plaintiffs have not pled sufficient facts to show that Nucor had a duty to warn Parker of the ductile limitations of the MIL-A-46100[3]

---

[3] The Court need not decide Nucor's remaining arguments with respect to Plaintiffs' alleged failure to allege all the elements of a failure to warn claim. However, the Court notes that with respect to all the elements of this claim, Plaintiffs would need to connect any alleged failures along the stream

steel and the Court will grant Nucor's motion to dismiss Plaintiffs' failure to warn claim against Nucor.

B. **Negligence and Gross Negligence**

Plaintiff's Complaint also asserts claims for negligence and gross negligence related to Defendants' alleged mishandling of the MIL-A-46100 steel. *See* Doc. No. 1, ¶¶101-103. Plaintiffs allege that Nucor failed to properly design, manufacture, market, adequately test, and warn of the ductile limitations of the MIL-A-46100 steel. Under Arizona law, the elements of negligence include: (1) the existence of a duty owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) an injury proximately caused by the breach. *Raffile v. Exec. Aircraft Maint.*, 2012 WL 4361409, at *5 (D. Ariz. Sept. 25, 2012) (citing *Flowers v. K-Mart Corp.*, 126 Ariz. 495 (Ct. App. 1980). Plaintiffs allege generally that "Nucor had a duty to exercise ordinary care, meaning that degree of care that would be used by a company or ordinary prudence under the same or similar circumstances, and Nucor breached that duty." (Doc. No. 1, ¶101). However, without further specificity as to Nucor's duty of ordinary care and how that duty is connected to Parker, Plaintiffs have failed to adequately plead facts that go beyond the "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *see Raffile*, 2012 WL 4361409, at *5 (dismissing Plaintiff's negligence claim because Plaintiff had not pled facts sufficient to show a duty owed by the Defendant or a breach of that duty in alleging that "defendants had a further duty to exercise reasonable care in the testing, inspection, and maintenance of all component parts" of an aircraft that malfunctioned and crashed). Thus, the Court will grant Nucor's motion and dismiss Plaintiff's negligence claim against Nucor, but

---

of commerce to Parker's decision to use the vest, not simply that a warning far upstream in the chain of manufacturing, distribution and sale led to a defective product.

without prejudice in the event that discovery establishes facts that would support Plaintiffs renewing their claim.

The Court will also dismiss Plaintiffs' gross negligence claim against Nucor for failure to state a claim because Plaintiffs' allegations are again merely legal conclusions that list the elements of the cause of action for gross negligence without further factual enhancement. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). While Plaintiffs allege that Nucor's conduct "constitutes gross negligence and involves an extreme degree of risk and potential harm to others, which Nucor had actual and subjective awareness of, but proceeded with conscious indifference," Plaintiff has not provided any specific factual allegations that Nucor's conduct in creating the steel plates was flagrant and evincing of a lawless and destructive spirit. *See Cota v. Penzone*, 2019 WL 415703, at *5 (D. Ariz. Feb. 1, 2019) (describing conduct as grossly negligent if "[i]t is flagrant and evinces a lawless and destructive spirit"). Thus, the Court will grant Defendant's motion to dismiss as to Plaintiffs' gross negligence claim without prejudice.

### C. Wrongful Death

Finally, Plaintiffs allege a claim for wrongful death on their own behalf as Parker's "statutory beneficiaries" who have suffered damages as a result of his death. *See* Doc. No. 1 at ¶104. The factual allegations supporting this claim simply refer to "Defendants' negligence," which is presumably the same negligent conduct alleged to be the basis for Plaintiffs' negligence claims against the various Defendants, including Nucor. Accordingly, to the extent that Plaintiffs' negligence claims against Nucor are to be dismissed, Plaintiffs' essentially derivative wrongful death claim must follow the same path.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant Nucor's Motion to Dismiss (Doc. No. 126-1) is **GRANTED IN PART** and **DENIED IN PART** as described above;

2. Plaintiffs' claims of failure to warn, negligence, gross negligence and wrongful death against Nucor are dismissed without prejudice and

3. This case shall proceed towards a determination of the merits on the Plaintiffs' remaining claims, including their manufacturing defect claim against Nucor, in the absence of a voluntary resolution of the dispute among the parties.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: June 7, 2023

Kenneth D. Bell
United States District Judge